DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a summary judgment issued by the Lucas County Court of Common Pleas involving underinsured/uninsured motorist ("UM/UIM") claims under Scott-Pontzer v. Liberty Mut. Ins. Co.
(1999), 85 Ohio St.3d 660. Because we conclude that appellant failed to give the insurer prompt notice of her claim and the insurer's rights were prejudiced, we affirm.
 {¶ 2} Appellant, Becky Erdmann, ("Erdmann") is the administratrix of the estate of her daughter, Tonia Erdmann. In April 1993, Tonia was killed in an accident while riding as a passenger on a motorcycle. The motorcycle driver, William E. Smith ("Smith") was uninsured. As the result of a wrongful death suit filed in 1995, Erdmann settled with her personal insurer, State Farm. She received $100,000; Tonia's two siblings each received $27,500. She then obtained a default judgment against Smith, but no damages were assessed. In May 1996, Erdmann received notice that Smith had filed for bankruptcy. Smith's debts, including any potential damages from the default judgment, were discharged in September.[1]
 {¶ 3} Eight years after the accident, in April 2001, Erdmann filed a complaint "for Discovery; Declaratory Judgment" against appellee, Federal Insurance Company ("Federal"), insurer of Tonia's employer on the date of the accident, The Kobacher Company[2]. Erdmann sought a declaration of rights and UM/UIM benefits under an insurance policy pursuant to Scott-Pontzer. Both parties filed motions for summary judgment. The trial court denied Erdmann's motion and granted summary judgment to Federal, determining that the insurance company was not notified as required by contract. As such, Federal was prejudiced as a result of having no opportunity to investigate the accident or to proceed against Smith before Erdmann settled with State Farm or Smith became bankrupt.
 {¶ 4} Erdmann now appeals from the trial court's judgment, setting forth the following six assignments of error:
 {¶ 5} "Assignment of Error No. 1:
 {¶ 6} "Federal's Insuring agreement contains no time limit for the filing of an uninsured motorist claim-fifteen year statute of limitations applies in accordance with R.C. § 2305.06.
 {¶ 7} "Assignment of Error No. 2:
 {¶ 8} "Plaintiff is afforded Coverage by virtue of Scott-Pontzervs. Liberty Mutual Fire Insurance Co.
 {¶ 9} "Assignment of Error No. 3:
 {¶ 10} "Plaintiff is legally entitled to recover.
 {¶ 11} "Assignment of Error No. 4:
 {¶ 12} "Contract exclusions do not apply.
 {¶ 13} "Assignment of Error No. 5:
 {¶ 14} "Notice provisions contained in policy are ambiguous.
 {¶ 15} "Assignment of Error No. 6:
 {¶ 16} "No subrogation rights to prejudice. [sic]"
 {¶ 17} We will address the first, fifth, and sixth assignments of error together first. Erdmann argues that the notice provisions in Federal's insurance policy are ambiguous, that no time limit is set for providing notice, and that the contract does not provide for Federal's subrogation rights.
 {¶ 18} In reviewing orders granting summary judgment, appellate courts employ the same standard as trial courts. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Such a motion may be granted only when it is demonstrated: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66, Civ.R. 56(C). The contract terms and relevant law require the trial court's judgment to be affirmed.
Contract Terms
 {¶ 19} Where an insurance contract is clear and unambiguous, its interpretation is a question of law. Leber v. Smith (1994),70 Ohio St.3d 548, 553; Red Head Brass, Inc. v.
 {¶ 20} Buckeye Union Ins. Co. (1999), 135 Ohio App.3d 616, 627. In interpreting insurance policies, as with other written contracts, the court looks to the terms of the policy to determine the intention of the parties concerning coverage. Minor v. Allstate Ins. Co., Inc. (1996),111 Ohio App.3d 16, 20. The court must give the words and phrases in the policy their plain and ordinary meaning. Id., citing State Farm Auto Ins.Co. v. Rose (1991), 61 Ohio St.3d 528, overruled on other grounds, Savoiev. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, paragraph one of the syllabus. Where the plain and ordinary meaning of the language used in an insurance policy is clear and unambiguous, a court cannot resort to construction of that language. Tomlinson v. Skolnik (1989),44 Ohio St.3d 11, 12, overruled on other grounds by Schaefer v. AllstateIns. Co. (1996), 76 Ohio St.3d 553.
A. Prompt Notice
 {¶ 21} The Supreme Court of Ohio has held that a requirement of "prompt" notification in an insurance policy "requires notice within a reasonable time in light of all the surrounding facts and circumstances."Ruby v. Midwestern Indemn. Co. (1988), 40 Ohio St.3d 159, syllabus, harmonized by Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186, 2002 Ohio 7217, ¶ 88. Ferrando discussed the determination of "reasonable time," stating:
 {¶ 22} "`Courts have generally construed such language [requiring that prompt notice of an accident to be given to an insurer] to mean that notice must be given within a reasonable time under the circumstances of the case. * * *
 {¶ 23} "`Where coverage is sought by an additional insured, that is, by a person who is not the named insured under the policy * * * the most common reason for failure of such additional insured to give timely notice to the named insured's insurer is that the additional insured was not aware of the fact that he was covered under the policy issued to the named insured. Courts have generally held that where an additional insured's ignorance of coverage is understandable, and where notice is given promptly after the additional insured becomes aware of possible coverage, even a long period of delay is excusable * * *. However, courts place limits on their liberality with respect to excusing delayed notice by holding generally that ignorance of coverage is no excuse where the additional insured failed to exercise due diligence in investigating possible coverage, a caveat which is usually invoked where the facts are such that the additional insured should have looked into the matter of coverage sooner than he did.'" Ferrando, supra, at ¶ 96-98, quoting Annotation, Liability Insurance: Timeliness of Notice of Accident by Additional Insured (1973), 47 A.L.R.3d 199, 202, Section 2[a].
 {¶ 24} An unexcused significant delay may be unreasonable as a matter of law. Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau
(l999), 88 Ohio St.3d 292, 300, harmonized by Ferrando, supra. See, also, Smith v. Liberty Mutual Ins. Co., 9th Dist. No. 21311,2003-Ohio-3160 (8 year delay after the accident was unreasonable);Wheeler v. W. Res. Mut. Cas. Co., 9th Dist. No. 02CA0043, 2003-Ohio-1806
(delay was unreasonable where insured provided notice to insurer more than four years after accident; almost three years after insured settled with tortfeasor; and two years after Scott-Pontzer was released); Gidleyv. Cincinnati Ins. Co., 9th Dist. No. 20813, 2002-Ohio-1740, (4 year delay was unreasonable); Kerwood v. Cincinnati Ins. Co, 10th Dist. No. 02AP-575, 2002-Ohio-7024, (6 year delay after accident and almost 2 years after Scott-Pontzer was unreasonable). Awaiting a new or favorable decision by the Supreme Court of Ohio has been determined not to excuse a lengthy delay in giving notice of a claim under an insurance policy. SeeLewis v. Kizer, 3rd Dist. No. 17-03-05, 2003-Ohio-4253; Kearney v. ValsiCleaners, 9th Dist. No. 02CA0111-M, 2003-Ohio-3506; Smith v. LibertyMutual Ins. Co, supra, at ¶ 62; Gidley, supra, at ¶ 32Kerwood, supra, at ¶ 27.
 {¶ 25} In this case, the Federal policy provides under its "Business Auto Policy" section that "[i]n the event of `accident,' claim, `suit,' or `loss,'" the insured must "give us or our authorized representative prompt notice of the `accident' or `loss.'" Thus, although the Federal policy in the instant case does not provide for a definite time limitation as to notice, the term "prompt notice" is sufficiently clear and unambiguous and provides a limit of "reasonable time" as to when notice must be given.
B. Subrogation
 {¶ 26} Contrary to Erdmann's contention, the policy does contain a subrogation clause. Written in plain English rather than legalese, the "Transfer of Rights of Recovery Against Others to Us" section found in Section IV(A)(5), on page 6 of the Business Auto policy,
 {¶ 27} clearly relates to Federal's rights of subrogation to recover any payments it made to the insured as a result of damages caused by another party. This section provides that "[i]f any person or organization to or for whom we make payment under the Coverage form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after `accident' or `loss' to impair them." Thus, the policy provides for subrogation rights. We next address whether summary judgment was properly granted based upon a breach of either the prompt-notice or subrogation contract provisions.
The Ferrando Rule
 {¶ 28} If an insurer's denial of UM/UIM coverage is based on the "insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice."Ferrando, 98 Ohio St.3d 186, 2002 Ohio 7217, paragraph one of the syllabus. "An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary." Id. The determination as to whether breach of such a condition relieves the insurer of its obligation to provide UM/UIM coverage involves a two-step process. Id. at ¶ 89. First, the court must determine if a breach occurred because the insurer did not receive prompt notice within a reasonable time. Id. at ¶ 90. As we noted previously, whether notice is reasonable is dependent upon all the surrounding facts and circumstances of each case. Id. at ¶ 67; Ruby, supra, at the syllabus.
 {¶ 29} If a breach of the prompt-notice provision has occurred, the court must then determine if the insurer was prejudiced such that UIM coverage must be forfeited. Ferrando, supra, at ¶ 89. In deciding the issue of prejudice to the insurer, a presumption arises that an unreasonable delay was prejudicial; however, the insured may rebut the presumption with contrary evidence. Id.
 {¶ 30} Similarly, in cases with subrogation-related clauses, the first step under Ferrando is to determine whether the provision actually was breached. If not, no further inquiry is required and UIM coverage must be provided. See Ferrando, at ¶ 91, citing McDonald v.Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27, paragraphs two and three of the syllabus, and Fulmer v. Insura Prop. Cas. Co.,94 Ohio St.3d 85, 2002 Ohio 64, paragraph one of the syllabus. If the subrogation-related clause was breached, the second step is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, against which the insured party bears the burden of presenting rebutting evidence. See Ferrando, supa, at ¶ 91.
 {¶ 31} In the present case, Erdmann did not file a UM/UIM claim against Federal until eight years after the accident, two years afterScott-Pontzer was announced. This length of time, on its face, is unreasonable. Erdmann's delay, moreover, involved more than the mere passage of time, since Smith, the tortfeasor, filed for bankruptcy in the meantime. Any potential for recovery against him was irreversibly compromised by the bankruptcy discharge of any damage amount. The allegation that Smith was driving under the
 {¶ 32} influence of alcohol created a possible non-dischargeable claim to recover the insurer's damages. Nevertheless, Federal was deprived of its opportunity to investigate the facts surrounding this allegation, negating any participation or preservation of a claim against the tortfeasor in the bankruptcy proceedings. Erdmann cannot refute this presumption of prejudice, since there is no way to reopen the bankruptcy to permit Federal's assertion of a subrogation claim against Smith.
 {¶ 33} Applying the Ferrando rule, we, therefore, conclude that the trial court properly determined that Erdmann breached the prompt-notice and subrogation provisions, and that those breaches were irrefutably prejudicial to Federal's rights. Since no material facts remain in dispute and Federal was entitled to judgment as a matter of law, the trial court properly granted summary judgment against Erdmann. Accordingly, Erdmann's first, fifth, and sixth assignments of error are not well-taken.
 {¶ 34} Appellant's remaining three assignments of error relate to coverage under Scott-Pontzer or the interpretation of other policy language. Based upon the disposition of the other three assignments of error, the second, third, and fourth assignments of error are moot. The judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.
Knepper and Pietrykowski, JJ., concur.
[1] It was alleged that Smith had alcohol in his blood, indicating the possibility that his actions were reckless or willful. "Reckless, willful, and wanton" is the equivalent of "willful and malicious" as used in Section 17(a)(2) of the Bankruptcy Act (Section 35, Title 11, U.S. Code). Breeds v. McKinney, 171 Ohio St. 336, paragraphs one and two. Liability for willful and malicious injuries to the person or property of another are not dischargeable in bankruptcy. Id.
[2] We note that in the record, this party is sometimes referred to as "The Kobacker Company." We will refer to the party as it was spelled when the case was filed, "The Kobacher Company."